# EXHIBIT A

**Joinder**

USActive 54248704.13
DOCS_DE:226037.1 53730/001

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Zohar III Corp., *et al.*,[1] | Bankruptcy Case No. 18-10512 (KBO) |
| Debtors. | (Jointly Administered) |
| Lynn Tilton, et al. | |
| Appellants, | Case No. 19-1874 (MN) |
| v. | |
| Zohar III, Corp. et al. | |
| Appellees. | |

**PROPOSED INTERVENOR AND APPELLEE MBIA INSURANCE CORPORATION'S JOINDER TO DEBTORS-APPELLEES' OBJECTION TO APPELLANTS' MOTION FOR A STAY PENDING APPEAL OF THE BANKRUPTCY COURT'S ORDER**

Dated: October 29, 2019

| **PACHULSKI STANG ZIEHL & JONES LLP** | **CADWALADER, WICKERSHAM & TAFT LLP** |
|---|---|
| Laura Davis Jones (Bar No. 2436) | Gregory M. Petrick |
| Timothy P. Cairns (Bar No. 4228) | Jonathan M. Hoff |
| 919 N. Market Street, 17th Floor | Ingrid Bagby |
| P.O. Box 8705 | Michele C. Maman |
| Wilmington, DE 19899-8705 (Courier 19801) | 200 Liberty Street |
| | New York, NY 10281 |
| Telephone: (302) 652-4100 | Telephone: (212) 504-6000 |
| Facsimile: (302) 652-4400 | Facsimile: (212) 504-6666 |
| Email: ljones@pszjlaw.com | Email: gregory.petrick@cwt.com |
|    tcairns@pszjlaw.com |    jonathan.hoff@cwt.com |
| |    ingrid.bagby@cwt.com |
| |    michele.maman@cwt.com |

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification numbers, are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).

Proposed Intervenor and Appellee MBIA Insurance Corporation ("MBIA") hereby submits this joinder ("Joinder") to the *Debtors-Appellees' Objection To Appellants' Motion For A Stay Pending Appeal Of The Bankruptcy Court's Order (A) Implementing The Terms Of The Settlement Agreement And (B) Resolving Dispute Over Monetization Process, Pursuant To Paragraph 11 Of The Settlement Agreement* (the "Stay Objection"), filed on October 29, 2019, in opposition to the motion by Lynn Tilton and the Patriarch Stakeholders (collectively, "Patriarch"),[2] filed on October 15, 2019, seeking a stay pending appeal (the "Stay Motion") of the *Order (A) Implementing The Terms Of The Settlement Agreement And (B) Resolving Dispute Over Monetization Process, Pursuant To Paragraph 11 Of The Settlement Agreement*, entered on September 27, 2019 (Bankr. Case No. 18-10512, Docket No. 974) by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for the reasons stated on the record at the hearing held on September 27, 2019 (the "Order"). In support of this Joinder, MBIA respectfully states as follows:

1.  MBIA hereby joins in, adopts and incorporates as though fully set forth herein the arguments set forth in the Debtors' Stay Objection and papers submitted in support thereof.

2.  MBIA is the largest creditor of Debtors Zohar I and Zohar II and is owed over $1 billion from the Debtors' estates. MBIA provided financial guaranty insurance policies for the benefit of certain senior noteholders, which guaranteed that MBIA would pay scheduled interest and principal to the insured noteholders in the event that Zohar I or Zohar II defaulted. In November 2015 and January 2017, respectively, Zohar I and Zohar II did default, and MBIA paid nearly $1 billion to the insured noteholders. Thus, MBIA has significant claims against the

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement (attached as Exhibit C to the Stay Motion).

-2-

Debtors, and proceeds received as a result of their monetization of the Portfolio Companies will reduce the over $1 billion Paid In Full amount owed to MBIA.  MBIA, therefore, is an economic party in interest to the Court's Order.  For these reasons, and the reasons set forth in the *Motion of MBIA For Leave To Intervene As Appellee Pursuant To Rule 8013(g)*, submitted concurrently herewith, MBIA would be prejudiced if the relief requested in Patriarch's Stay Motion is granted.

3.  All four factors relevant to the Court's consideration of Patriarch's Stay Motion — (1) likelihood of success; (2) irreparable injury; (3) balance of equities; and (4) public interest — require that the Stay Motion be denied.

### I. Debtors Are Likely To Succeed On The Merits Of Patriarch's Appeal

4.  Appellants cannot meet their burden of demonstrating a stay of the Bankruptcy Court's Order is warranted for the reasons set forth in the Stay Objection.  Further, MBIA was a party to the Settlement Agreement and an active participant in the mediation discussions and negotiations that produced the Settlement Agreement.  The Bankruptcy Court's Order correctly interpreted the unambiguous language of the Settlement Agreement, which manifested the parties' intent thereunder.

### II. MBIA And The Secured Creditors, Not Patriarch, Will Be Irreparably Injured If The Bankruptcy Court's Order Is Stayed

5.  The balance of equities favors denial of Patriarch's Stay Motion because staying the Bankruptcy Court's Order will cause irreparable injury to MBIA and the Secured Creditors, not Patriarch.

6.  Patriarch contends that, absent a stay from this Court pending appeal, the Bankruptcy Court's Order will irreparably harm Ms. Tilton, Patriarch and the Portfolio Companies in three different ways:  the Order will (1) require Ms. Tilton to spend time working with the Debtors to monetize the Portfolio Companies; (2) result in a "dysfunctional joint monetization

-2-

process" that will depress the sales price of the Portfolio Companies below their true value; and (3) cast a "value-depressive cloud" over the Portfolio Companies making it difficult for them to conduct normal business operations. *See* Stay Motion ¶¶ 29-31. Each of Patriarch's arguments falls under its own weight.

7. Nothing in the Bankruptcy Court's Order harms Ms. Tilton, Patriarch or the Portfolio Companies. The Bankruptcy Court's Order requires only that Patriarch and Ms. Tilton continue to perform their obligations as agreed under the Settlement Agreement. Such performance does not and cannot constitute irreparable injury. To the extent Ms. Tilton refuses to delegate monetization responsibilities to other Patriarch employees and chooses not to defer to the Independent Director — former Delaware District Court Judge Joseph J. Farnan, Jr. — in monetizing the Portfolio Companies, the effect of such personal choices cannot be laid at the feet of the Debtors, let alone the Bankruptcy Court's Order. At most, Patriarch's obligation to work with Debtors to monetize the Portfolio Companies will continue as it has for the last 18 months, while this Court addresses the merits of Patriarch's appeal.

8. Additionally, nothing in the Bankruptcy Court's Order or the Settlement Agreement would result in the purported "dysfunction" that Patriarch claims will reduce the value of the Portfolio Companies or impede their business operations. In that regard, Patriarch's assertion that monetizing companies while the parties simultaneously "go to war" will be value-depressive and "doomed to fail" ignores that the Bankruptcy Court's Order and Settlement Agreement's lifting of the 15-month litigation stay does not require any party actually to engage in litigation, let alone "go to war."[3] Nor does the Settlement Agreement state or even imply a

---

[3] The fact that Patriarch is the only party to the Settlement Agreement that has commenced new litigation following the Bankruptcy Court's Order cannot support its argument. *See* Patriarch Stay Motion at 12 n.6.

binary alternative path: monetize or litigate. Indeed, in the event of a failure to satisfy the 15 Month Window milestones, the Independent Director and CRO gain broader authority under the Settlement Agreement to exercise their fiduciary duties to achieve the Paid in Full objective. The language in Paragraph 25 of the Settlement Agreement stating that the parties have and may exercise their rights under applicable law similarly provides no support for Ms. Tilton's argument. That language means no more than, other than compliance with its terms, the Settlement Agreement does not prejudice the parties or any arguments or claims they may have in the event of future litigation. *See* Settlement Agreement ¶ 25.

9.     In contrast, a stay of the Bankruptcy Court's Order pending appeal will cause legitimate and irreparable injury to the Debtors, MBIA and the other Secured Creditors by cutting off the principal means available to the Debtors' fiduciaries to achieve recoveries for the Secured Creditors, including MBIA — the achievement of which is the ultimate objective of the Settlement Agreement and the goal of chapter 11. As collateralized loan obligation funds with no operating business, the Zohar Funds' collateral is the sole source of funds available from which Debtors can repay creditors. The collateral likewise is the sole source of funds available to fund these chapter 11 cases. Because the monetization process provides the only current means to achieve recoveries for creditors, entry of a stay of the Bankruptcy Court's Order pending appeal results in "double" harm to the Secured Creditors. A stay drives up the costs incurred by the Debtors' estates and borne by the Secured Creditors, while simultaneously preventing the Debtors from monetizing the Zohar Portfolio Companies and generating estate proceeds for the benefit of the Debtors' creditors. A stay deprives the Secured Creditors of their bargained-for benefits under the Settlement Agreement — asset monetizations — and, accordingly, will result in irreparable injury to Debtors, MBIA and the other Secured Creditors.

-5-

10. A stay would also disrupt the status quo by effectively voiding Patriarch's obligations under the Settlement Agreement — which obligations the Bankruptcy Court's Order confirmed — to cooperate with the CRO and Independent Director to sell or refinance the Portfolio Companies under the purview of the Bankruptcy Court.  MBIA expressly bargained for an orderly process to monetize the Portfolio Companies, and a stay of Patriarch's confirmed obligations under the Settlement Agreement would cause delays and risk lost opportunities for valuable Portfolio Company sales or refinancings that the Settlement Agreement requires.  Such a result would be inequitable and inconsistent with Ms. Tilton's own sworn statements to the Bankruptcy Court that she caused the Debtors to "voluntarily file these Chapter 11 Cases *to permit the bankruptcy court to oversee* an orderly process of unlocking the value in the Zohar Funds through *sales and refinancings of the Portfolio Companies*."  *See* Tilton Decl., dated March 11, 2018. Bankr. Case No. 18-10512, Dkt. No. 5 (emphasis added).

11. Patriarch contends that "a stay risks no harm to Debtors because Ms. Tilton will devote herself to the Group A Portfolio Companies" (Stay Motion ¶ 32), but this self-serving statement, unlike the express terms of the Settlement Agreement itself, does not oblige Patriarch to monetize the Portfolio Companies for the benefit of the Secured Creditors.  In fact, Patriarch's conduct within weeks of the entry of the Bankruptcy Court's Order with respect to at least one Group A Portfolio Company completely undermines Patriarch's assertion.  *See In re Dura Automotive*, Case No. 19-06741 (M.D. Tenn.) (the "Dura Chapter 11 Cases")).  In the Dura Chapter 11 Cases, Patriarch took advantage of Dura Automotive's purported cash crisis to attempt a credit-bid funded takeover of that Portfolio Company outside of the joint monetization process prescribed by the Settlement Agreement.  The Bankruptcy Court's oversight of Patriarch's actions — which oversight was predicated on the Debtors' standing to enforce Patriarch's monetization

obligation under the Settlement Agreement — was integral to preventing Patriarch from successfully manipulating the assets and financial condition of that Portfolio Company and acquiring it through an insider transaction at a potential bargain basement price. *See* Order, Bankr. Case No. 18-10512, Dkt. No. 1003.

12. Tellingly, in arguing that a stay risks no harm to the Debtors, Patriarch and Ms. Tilton insist the Portfolio Companies "are her companies." *See* Stay Motion ¶ 32. They are simply wrong.[4] And the Bankruptcy Court's Order must remain in effect to protect the status quo and prevent Patriarch from unilaterally treating the Portfolio Companies as Ms. Tilton's personal property unburdened by the obligations bargained for in the Settlement Agreement.

### III. A Stay Is Not In The Public Interest

13. Repeating its unsubstantiated assertion that a joint monetization process impedes the operations and depresses the value of the Portfolio Companies, Patriarch contends that a stay is in the public interest because it would "stabilize the Group A Portfolio Companies." *See* Patriarch Stay Motion ¶ 33. This argument fails for the reasons set forth above. *See supra* ¶¶ [15-16]. A stay of the Bankruptcy Court's Order is not in the public interest for the additional reason that releasing Patriarch from its obligations to jointly cooperate with the Debtors to monetize Portfolio Companies would frustrate the Debtors' attempts to implement the central purpose of the Settlement Agreement. Such actions would not be permitted if the Bankruptcy Court's Order was upheld, and creating a window of time in which Patriarch conceivably could

---

[4] To the contrary, the Delaware Court of Chancery — the only court to have examined the underlying dispute between the Zohar Funds and Patriarch regarding the ownership of the Portfolio Companies — expressly held that the Zohar Funds, and not Ms. Tilton, are the beneficial owners of the disputed equity ownership in the Portfolio Companies. *See Zohar II 2005-1 Ltd. v. FSAR Holdings*, C.A. No. 12946-VCS, 2017 WL 5956877, at *39 (Del. Ch. Nov. 30, 2017); *see also Zohar CDO 2003-1, LLC v. Patriarch Partners, LLC*, C.A. No. 12247-VCS (2016 WL 6248461, at *14 n.128 (Del. Ch. Oct. 26, 2016) (Patriarch's attempt to explain the equity interests held by Zohar Funds if, in fact, Patriarch was the true owner of equity "was, at best confusing and, at worst, codswallop").

-7-

circumvent its obligations under the Settlement Agreement is not in the public interest.  Requiring Patriarch to adhere to its obligations under the Settlement Agreement and standing behind the legitimacy of the Bankruptcy Court's Order, however, is unquestionably in the public interest.

### **RESERVATION OF RIGHTS**

14. MBIA hereby reserves and preserves all of their rights, remedies, and arguments in connection with this Joinder, as well as in connection with the filings joined, and reserves all rights to supplement this Joinder and to be heard before the Court with regard to the arguments set forth in this Joinder and other related filings, even if the Debtors purport to limit or otherwise resolve Patriarch's Stay Motion, as well as reserves the right to make any other applicable arguments, including those raised in other joinders or other briefing.  Nothing contained herein is intended to contravene or supersede any arguments or positions that MBIA may make or may take.

## **CONCLUSION**

WHEREFORE, MBIA requests that the Court deny Patriarch's Stay Motion and grant such other and further relief as the Court may deem just and proper.

Dated:    October 29, 2019
              Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (Bar No. 2436)
Timothy P. Cairns (Bar No. 4228)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
       tcairns@pszjlaw.com

and

CADWALADER, WICKERSHAM & TAFT LLP
Gregory M. Petrick
Jonathan M. Hoff
Ingrid Bagby
Michele C. Maman
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Email: gregory.petrick@cwt.com
       jonathan.hoff@cwt.com
       ingrid.bagby@cwt.com
       michele.maman@cwt.com

*Counsel to MBIA Insurance Corporation*